IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

TIMOTHY W. POPE                                                                                    PLAINTIFF

v.                                         NO. 4:14-cv-00374 JJV

CAROLYN W. COLVIN, Acting Commissioner                                          DEFENDANT
of the Social Security Administration

### MEMORANDUM OPINION AND ORDER

Plaintiff, Timothy W. Pope ("Pope"), began the case at bar by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, he challenged the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), a decision based upon findings made by an Administrative Law Judge ("ALJ").

Pope maintains (1) the ALJ's findings are not supported by substantial evidence on the record as a whole,[1] (2) the ALJ failed to fully and fairly develop the record and offers three reason why, two of which the Court will address as one, and (3) the ALJ should have clarified the confusion surrounding the medical records of Clifford Evans, M.D. ("Evans"), a treating physician, and should have obtained an opinion from him about Pope's ability to perform work-related activities.

The ALJ has an obligation to fully develop the record. See Battles v. Shalala, 36 F.3d 43 (8th Cir. 1994). There is no bright line test for determining whether the ALJ fully

---

[1]The question for the Court is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011).

developed the record; the determination is made on a case-by-case basis. See Id. The claimant bears a "heavy burden" in showing that the ALJ failed to satisfy his obligation. See Combs v. Astrue, 243 Fed.Appx. 200, 204 (8th Cir. 2007). The claimant must show "both a failure to develop necessary evidence and unfairness or prejudice from that failure." See Id. [citing Haley v. Massanari, 258 F.3d 742, 749-750 (8th Cir. 2001)].

The record reflects that Pope saw Evans, or someone associated with his medical practice, on several occasions between March 2008 and March 2010. See Transcript at 264-285, 328-335.[2] Evans' progress notes, and the notes of an associate, record a litany of Pope's complaints and reflect diagnoses of, inter alia, hypertension, degenerative disc disease of the lumbar region, and anxiety.

During the hearing, the ALJ inquired into whether there was any missing evidence. See Transcript at 46-48. Pope's representative stated that a residual functional capacity assessment from Evans had been offered but was not in the record. The ALJ agreed to leave the record open so Pope could submit the assessment. When it was not submitted within six months, Pope's representative was contacted about the assessment. See Transcript at 260. Although he represented that it would be submitted, it never was.

The ALJ analyzed Pope's claims for benefits and noted the findings and diagnoses offered by Evans and his associate. The ALJ specifically noted Evans' diagnosis of degenerative disc disease but observed that the basis for the diagnosis was not clear. In

---

[2]Someone other than Evans appears to have signed the progress notes from January 26, 2010, and March 1, 2010. See Transcript at 330-333. It is difficult to decipher whose signature appears on those notes. The Court accepts that Evans signed the remaining progress notes, even though his signature is virtually impossible to decipher.

evaluating the opinion evidence, the ALJ afforded little weight to Evans' diagnoses and "opinions," finding: "... Evans is a family practitioner and some of his diagnoses appear to be outside his area of expertise. Furthermore, the records appear to indicate that some of the treatment was provided, and opinions rendered by, someone other than ... Evans (name illegible) whose credentials are unclear. ..." See Transcript at 36.

The Court has reviewed the record and is satisfied that it was fully and fairly developed as to Evans' findings and diagnoses. It is true the record does not contain a residual functional capacity assessment/medical source statement from Evans.[3] The ALJ, though, not only held the record open for eight months awaiting the submission of the assessment/statement, Pope's representative was contacted during the eight-month period and asked to provide it. Although an agency representative was told the assessment/statement would be submitted "as soon as possible," see Transcript at 260, it never was. Pope faults the ALJ, and to a lesser degree faults Pope's own representative, for failing to obtain the assessment/statement, but it was Pope's responsibility to submit the assessment/statement. It was not the ALJ's responsibility.

The Court has examined the record for an opinion from Evans that would give his view of Pope's ability to perform work-related activities, and finds no such opinion. The record only contains Evans' progress notes, and his associate's notes, for the period from March 2008 through March 2010. It may be, as the Commissioner maintains, that Pope

---

[3]The Court assumes that a residual functional capacity assessment and a medical source statement are the same thing.

confuses a progress note for an opinion.[4]

Notwithstanding the foregoing, the Court construes Evans' progress notes, and those by his associate, as "opinions." They offer little insight, though, into their views of Pope's ability to perform work-related activities. The opinions simply note Pope's complaints, diagnoses of those complaints, and the treatment plans. Although some of the reasons the ALJ gave for discounting the opinions are not particularly compelling, e.g., "Evans is a family practitioner and some of his diagnoses appear to be outside his area of expertise," the Court cannot say that the ALJ erred in discounting the opinions as the evidence to support them is minimal.

Pope offers a second reason why the ALJ failed to fully and fairly develop the record. Pope maintains that the ALJ should have obtained "evidence from the treating specialist in Little Rock as suggested by the examining source, Ted Honghiran, M.D." See Pleading 11 at 15.

The record reflects that in November 2010, Pope was seen by Ted Honghiran, M.D., ("Honghiran") for an consultative orthopaedic examination. See Transcript at 347-348. Honghiran observed that Pope had a "painful range of motion of the lumbar spine," could flex to sixty degrees with some degree of pain, but had "no acute muscle spasms ..." See Transcript at 348. Pope's straight leg raises were negative on both sides, and he had a normal reflex and sensation. X-rays of Pope's spine showed a "good alignment of

---

[4]The ALJ afforded little weight to the "opinions" rendered by Evans. See Transcript at 36. It is not clear why the ALJ referred to Evan's "opinions" when the record contains no such opinions from him.

the lumbar spine," see Transcript at 348, and "degenerative dis[c] disease at the L5-S1 level." See Transcript at 348. It was Honghiran's impression that Pope had chronic back pain from degenerative disc disease but had no "neurological deficits and no obvious muscle atrophy ..." See Transcript at 348. Honghiran made the following recommendation:

> His pain will be chronic. He will continue to have pain and will be aggravated by long standing [and] walking and heavy lifting more than 30 to 50 pounds. I advised him to get records from his doctor in Little Rock to send to Social Security so the judge can have a record also which is detailed about the treatment in the past since I do not have it with me today.

See Transcript at 348. Honghiran accompanied his examination report with a range of motion chart. See Transcript at 349-350. Honghiran noted that Pope's range of motion in all extremities was normal, save reduced flexion and no extension whatsoever in his lumbar region.

The Court has reviewed the record and is satisfied that it was fully and fairly developed as to Honghiran's findings. There is nothing to suggest that his findings were incomplete because of his failure to review the medical records from Pope's "doctor in Little Rock." It is true that Honghiran did not offer a specific opinion as to Pope's ability to lift weight or the number of hours he can stand in an eight-hour workday, although Honghiran made some general observations about those matters. Honghiran's failure to review the medical records from Pope's "doctor in Little Rock," though, was not the reason he did not offer a specific opinion about Pope's ability to lift weight or stand. Instead, it does not appear that he was asked to provide such an opinion.

Pope maintains that the record is not complete because it does not contain the medical records of his "doctor in Little Rock."[5] It was Pope's responsibility to obtain the medical records, not the ALJ's responsibility.

The Court finds the record contains sufficient information for the ALJ to have made an informed decision. Pope has not shown that the ALJ failed to develop necessary evidence and unfairness or prejudice from that failure. There is also nothing to suggest that the additional evidence identified by Pope would produce findings substantially different than those presently in the record.

Pope offers a second reason why the ALJ's findings are not supported by substantial evidence on the record as a whole: his residual functional capacity was not properly assessed. It appears that he so maintains because the record contains no evidence of his "ability to lift and carry a specific weight." See Pleading 11 at 18. He additionally maintains the following in support of his assertion:

> In Plaintiff's case, the medical source statement from ... Evans is missing. The medical source statement from ... Honghiran was never submitted to the examining source for completion. The state agency sources that did complete medical source statement forms did not examine the claimant and can not act as substantial evidence. ...
>
> There is an argument that the State Agency non-examining sources could have issued opinion evidence if they had been provided copies of ... Honghiran's report and asked to reevaluate the claimant's RFC based upon that new evidence. However, there is no indication that [the] ALJ provided ... Honghiran's report to the State Agency. ...
>
> Basing his opinion upon State Agency non-examining sources which was

---

[5]It is likely that the "doctor in Little Rock" is either Sunder Krishnah or Darin Wilbourn, but it is difficult to find with any certainty.

> formulated prior to critical examining source evidence, and the incomplete report of the examining source, and failing to hold the record open for the missing treating source opinion evidence–these three errors combine to result in a faulty foundation for the ALJ's RFC determination.

See Pleading 11 at 19.

The ALJ is required to assess the claimant's residual functional capacity, which is a determination of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record, but the assessment must be supported by some medical evidence. See Wildman v. Astrue, 596 F.3d 959 (8th Cir. 2010).

Substantial evidence on the record as a whole supports the ALJ's assessment of Pope's residual functional capacity. The ALJ considered the medical evidence and adopted the findings and diagnoses made by Honghiran, and to a less degree those made by Evans. Their findings establish that Pope experiences back pain that is aggravated when he stands and walks for long periods of time or attempts to lift more than thirty to fifty pounds. See Transcript at 264-285, 328-335, 348. Given those limitations, the ALJ's residual functional capacity report stated: he can "lift and carry [twenty] pound occasionally and [ten] pounds frequently," he can "sit for about [six] hours during an eight-hour workday," and he can "stand and walk for about [six] hours during an eight-hour workday. See Transcript at 32.

The ALJ recognized that Pope is obese, an impairment that may make certain activities more difficult. See Transcript at 34-35. The ALJ incorporated that impairment into Pope's residual functional capacity and found that he can "occasionally climb,

balance, stoop, kneel, crouch, and crawl." See Transcript at 32.

The ALJ adopted the findings of Don Ott, Psy.D., ("Ott"), and to a less degree those made by Evans. Ott performed a mental diagnostic evaluation of Pope and found he has a mood disorder, abuses alcohol, and has a nicotine dependence. See Transcript at 287-293. The ALJ incorporated mood disorder into Pope's residual functional capacity and found he can work in a job where "interpersonal contact is incidental to the work performed." See Transcript at 35.

The ALJ also considered the opinions of state agency consultants who evaluated Pope's physical and mental abilities to perform work-related activities. See Transcript at 36-37.[6] The ALJ afforded little weight to their opinions of Pope's physical abilities but gave great weight to their opinions of his mental abilities.[7]

The ALJ also adequately considered[8] Pope's daily activities, noting that he spends most of his day sitting around the house but is capable of doing other activities. See Transcript at 34, 60-62, 66, 220-225. The ALJ considered that Pope generally takes no prescription or over-the-counter medications for his pain, although he has taken pain

---

[6]Honghiran was a state agency consultant, but the ALJ gave his opinion "substantial weight" because he examined Pope and reviewed the medical evidence. See Transcript at 36.

[7]Ott and Jerry Henderson, Ph.D., agreed that Pope's mental impairment no more than moderately limited him in performing work-related activites. See Transcript at 287-293, 299-312, 313-316.

[8]Although the ALJ did not cite Polaski v. Heckler, he adequately considered the Polaski v. Heckler factors in evaluating the non-medical evidence.

medication in the past but it adversely affected his blood pressure. See Transcript at 34, 63. The ALJ also considered that Pope drinks six beers a day if he has them, see Transcript at 36, 65; has been arrested for acts of violence, see Transcript at 36, 288; had some work after the alleged onset date, albeit not substantial gainful activity, see Transcript at 30, 36, 211; and did not assist in acquisition of medical evidence, see Transcript at 36.

Pope's challenge to the assessment of his residual functional capacity is largely noting the absence of (1) a residual functional capacity assessment/medical source statement from Evans, and (2) an opinion from Honghiran addressing Pope's ability to lift weight or the number of hours he can stand in an eight-hour workday. The Court will not repeat the previous analysis of the missing evidence, save to again note that Pope has not shown the ALJ failed to develop necessary evidence and unfairness or prejudice from that failure.

"A disability claimant has the burden to establish his [residual functional capacity]." See Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) [internal quotation and citations omitted]. In this instance, Pope failed to carry his burden and show that his residual functional capacity was more restricted than that found by the ALJ. In addition, the Court finds that the record contains sufficient information for the ALJ to have made an informed decision on Pope's residual functional capacity.

Given the foregoing, there is substantial evidence on the record as a whole to support the ALJ's findings. Pope's complaint is therefore dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this 4th day of May, 2015.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE